IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT J. NICASTRO, *Plaintiff* | : : : | CIVIL ACTION |
| v. | : : | |
| SARA MCMULLEN *et al.*, *Defendants* | : : : | No. 21-3176 |

## MEMORANDUM

PRATTER, J.                                                                                                                           APRIL 22, 2022

Mr. Nicastro brings *pro se* claims pursuant to 42 U.S.C. § 1983 against his parole agent, Sara McMullen, and his mental health therapist, Jim Doughty, related to his recent arrests for violating the terms of his parole and making terroristic threats. Ms. McMullen and Mr. Doughty have each filed motions to dismiss the complaint for failure to state a claim. Mr. Nicastro has responded with various filings, including a motion to add a defendant and a motion to hold both defendants in contempt of court. For the reasons explained below, the Court will grant Ms. McMullen's and Mr. Doughty's motions to dismiss and deny Mr. Nicastro's motions.

### BACKGROUND

Mr. Nicastro claims that his parole agent, Ms. McMullen, arrested him on three separate occasions.

First, he alleges, Ms. McMullen arrested him in January 2020 for missing a therapy session and violating the terms of his parole. He was in jail for several weeks and then released. He subsequently lost his job. He blames the job termination on this arrest because he was away from work while in jail.

1

Second, he alleges, Ms. McMullen arrested him on December 10, 2020 for statements he made to his "state-mandated" therapist, Mr. Doughty. Doc. No. 2, Compl. at 2, 6. According to Mr. Nicastro, Mr. Doughty called him to ask his permission to disclose statements made in the therapy session, but Mr. Nicastro did not give permission. Nonetheless, according to Mr. Nicastro, Mr. Doughty shared those statements, and Ms. McMullen then arrested Mr. Nicastro. He was incarcerated for 6 weeks pending a hearing. This time, he lost his apartment lease.

Third, Mr. Nicastro alleges he was arrested on March 15, 2021 for making a threat against Ms. McMullen. According to Mr. Nicastro, Ms. McMullen gave "false, misleading & incomplete testimony" to the Lancaster Police Department about this threat, leading to his incarceration. *Id.* at 7. At the time he filed this complaint, Mr. Nicastro was in custody pending a hearing based on these new charges.

Mr. Nicastro accuses Ms. McMullen and Mr. Doughty of violating his civil rights in both their official and individual capacities. Specifically, Mr. Nicastro cites the First, Fourth, and Fourteenth Amendments as the basis for his § 1983 claims against both defendants. He seeks $243,000 in compensatory and punitive damages, as well as a federal criminal investigation into an alleged conspiracy against him and leave to refile certain of his previously dismissed federal civil rights complaints on their original dockets.

## LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). The question is not whether the claimant "will ultimately prevail . . . but whether

2

his complaint [is] sufficient to cross the federal court's threshold." *Skinner v. Switzer*, 562 U.S. 521, 530 (2011) (citation and internal quotation marks omitted).

In evaluating the sufficiency of a complaint, the Court adheres to certain well-recognized parameters. For one, the Court may consider "only the allegations contained in the complaint, exhibits attached to the complaint and matters of public record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). In addition, the Court must accept as true all reasonable inferences emanating from the allegations and view those facts and inferences in the light most favorable to the nonmoving party. *Revell v. Port Auth. of N.Y., N.J.*, 598 F.3d 128, 134 (3d Cir. 2010). But "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678; *see also Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (explaining that a court need not accept a plaintiff's "bald assertions" or "legal conclusions") (internal quotation marks omitted).

Mr. Nicastro's *pro se* pleading should be "liberally construed." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). That admonition does not demand that the Court ignore or discount reality, however, even given the indulgent nature of the Court's review of *pro se* pleadings. The Court "need not accept as true unsupported conclusions and unwarranted inferences." *Doug Grant, Inc. v. Greate Bay Casino Corp.*, 232 F.3d 173, 184 (3d Cir. 2000) (internal quotation marks omitted).

## ANALYSIS

Ms. McMullen and Mr. Doughty filed separate motions to dismiss Mr. Nicastro's claims against them.

I. **Ms. McMullen's Motion to Dismiss**

*A. Official Capacity*

Ms. McMullen asks the Court to dismiss the claims against her in her official capacity. Ms. McMullen is an employee of the Pennsylvania Board of Probation and Parole, which is a sub-agency within the Pennsylvania Department of Corrections.

An official-capacity claim against a state official is in reality a claim against the state. *Hafer v. Melo*, 502 U.S. 21, 25 (1991). The Eleventh Amendment bars suits for damages against states and state employees acting in their official capacities unless the state has consented to suit. *Kentucky v. Graham*, 473 U.S. 159, 169 (1985). The Commonwealth of Pennsylvania has not provided this consent. *See* 42 Pa. Cons. Stat. § 8521(b). Therefore, Mr. Nicastro's claims for damages against Ms. McMullen in her official capacity are barred by the Eleventh Amendment.

Mr. Nicastro's claim for injunctive relief against Ms. McMullen in her official capacity is also barred. Section 1983 establishes liability only for a "person who, under color of [state law] . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Under the "person" requirement, "neither a State nor its officials acting in their official capacities are 'persons' under § 1983." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). So the official-capacity § 1983 claims against Ms. McMullen must be dismissed in their entirety.

*B. Individual Capacity*

Mr. Nicastro also brings the same claims against Ms. McMullen in her individual, *i.e.*, personal, capacity. These claims are not subject to the same Eleventh Amendment bar. *Hafer*, 502 U.S. at 30–31. "[T]o establish *personal* liability in a § 1983 action, it is enough to show that

4

the official, acting under color of state law, caused the deprivation of a federal right." *Kentucky*, 473 U.S. at 166 (emphasis in original). Ms. McMullen argues that Mr. Nicastro fails to plausibly allege deprivation of a federal right. The Court will consider each basis on which Mr. Nicastro brings his claims.

A. First Amendment

First, Mr. Nicastro asserts that Ms. McMullen's actions constituted retaliation in violation of his First Amendment rights. "In order to plead a retaliation claim under the First Amendment, a plaintiff must allege: (1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Indep. Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). For the first step, not all speech is constitutionally protected. "[F]or example, a State may punish those words which by their very utterance inflict injury or tend to incite an immediate breach of the peace." *Virginia v. Black*, 538 U.S. 343, 359 (2003) (internal quotation marks omitted).

Mr. Nicastro has failed to plead that he engaged in constitutionally protected speech. The only factual matter that appears to relate to this claim is his allegation that the arrests were "[r]etaliation initiated by Parole Supervisor DiRienzo for my having exercised Civil Rights while being illegally incarcerated." Compl. at 7. Mr. DiRienzo is not a party to this action and Mr. Nicastro does not allege facts related to any of his conduct while incarcerated.

However, construing the *pro se* complaint liberally, it appears that Mr. Nicastro alleges that his arrest by Ms. McMullen was in retaliation for the statements he made in his therapy sessions or in text messages to Ms. McMullen that were deemed terroristic threats. But Mr. Nicastro does not actually explain what he said to his therapist or to Ms. McMullen; instead, he

simply notes that Ms. McMullen considered his statements "tantamount to assaultive behavior." Compl. at 6. Making a threat is not constitutionally protected conduct. *Black*, 538 U.S. at 359. Absent more factual specificity with which this Court could assess whether Mr. Nicastro's statements would, as a matter of law, receive First Amendment protection, Mr. Nicastro fails to state a First Amendment claim.

B. Fourth Amendment

Mr. Nicastro also alleges that Ms. McMullen violated his Fourth Amendment rights. He alleges that she arrived to "arrest and imprison" him three times, appearing to assert claims for false arrest, false imprisonment and/or malicious prosecution. Compl. at 5–7.

"To make out either a false arrest or false imprisonment claim, [a plaintiff must] demonstrate that his arrest was unsupported by probable cause." *White v. Andrusiak*, 655 F. App'x 87, 90 (3d Cir. 2016).[1] Probable cause for the arrest is established if "at that moment the facts and circumstances within [the arresting officer's] knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the [arrestee] had committed or was committing an offense." *Beck v. Ohio*, 379 U.S. 89, 91 (1964). The Court need not consider the arresting officer's actual reasons for the arrest because "the determination of probable cause for arrest is an objective test evaluated in relation to all the information the arresting officer had when he [or she] arrested" the plaintiff. *Patterson v. Bd. of Prob. & Parole of Commw. of Pa.*, 851 F. Supp. 194, 201 (E.D. Pa. 1994). "Although determinations of probable cause are

---

[1] In other contexts, such as the search of a home, courts have employed the lower standard of reasonable suspicion for Fourth Amendment claims by parolees. *See, e.g., Griffin v. Wisconsin*, 483 U.S. 868, 873 (1987). Here, the Court need not address which standard is applicable to arrests based on parole violations because Mr. Nicastro fails to state a claim even under the standard more favorable to him. *See United States v. Noble*, 326 F. App'x 125, 127 (3d Cir. 2009) ("[I]t is unclear whether a parole officer must have probable cause to arrest a parolee for parole violations, or whether a less demanding standard applies. We need not answer that question here, however, because the arresting officers clearly had probable cause to arrest [the criminal defendant].").

6

usually the province of the jury, a district court 'may conclude that probable cause did exist as a matter of law if the evidence, viewed in the light most favorably to the plaintiff, reasonably would not support a contrary [inference]'" at the motion to dismiss stage. *Shelley v. Wilson*, 339 F. App'x 136, 138 (3d Cir. 2009) (per curiam) (quoting *Smith v. Marasco*, 318 F.3d 497, 514 (3d Cir. 2003)).

For each of the three arrests at issue, Mr. Nicastro states that Ms. McMullen unlawfully caused his arrest, without alleging supporting factual matter to allow the Court to infer that any of the arrests lacked probable cause.

*First*, Mr. Nicastro states that he was arrested in January 2020 for cancelling a therapy session. The Court takes judicial notice of his state criminal docket sheet,[2] which includes a finding of non-compliance with the terms of his parole on December 23, 2019, followed by a January 23, 2020 order issuing a detainer. Mr. Nicastro's complaint does not dispute that he cancelled the required therapy session, instead complaining that a former therapist (not Mr. Doughty) had made sexual advances toward him.[3] This allegation supports, rather than challenges, Ms. McMullen having probable cause to arrest Mr. Nicastro for missing a therapy session and violating the terms of his parole (regardless of whether, according to Mr. Nicastro, he had good reasons for missing the session).

*Second*, Mr. Nicastro alleges that on December 10, 2020, Ms. "McMullen and her partner arrived at [his] Lancaster apartment to arrest and imprison [him] claiming that something [he told Mr. Doughty] was tantamount to assaultive behavior." Compl. at 6. According to Mr. Nicastro,

---

[2] At the motion to dismiss stage, the Court may take judicial notice of "matters of public record." *Buck v. Hampton Twp. Sch. Dist.*, 452 F.3d 256, 260 (3d Cir. 2006) (internal quotation marks omitted). The criminal docket for Mr. Nicastro's previous charges is a matter of public record and may properly be considered at the motion to dismiss stage. *See, e.g., Shelley*, 339 F. App'x at 137 n.2.

[3] Mr. Nicastro also alleges that Ms. McMullen "was also harassing [him] by repeatedly calling [his] [l]andlord to try to get [him] evicted from [his] [l]ease." *Id.* But this allegation is not relevant to any asserted claim.

7

Mr. Doughty told Ms. McMullen that he had made threats in a therapy session. Again, this allegation does not provide factual matter upon which the Court could find that Ms. McMullen lacked probable cause to arrest Mr. Nicastro as his parole officer. Mr. Nicastro does not deny making the threats at issue; rather, he takes issue with Mr. Doughty's "violat[ing] [his] trust" by disclosing these statements to authorities. Compl. at 6. Mr. Nicastro does not allege what those threats were and he provides no information to suggest that they were not severe enough or imminent enough to justify the arrest. *Cf. Paszkowski v. Roxbury Twp. Police Dep't*, 581 F. App'x 149, 151 (3d Cir. 2014) (alleging "that no reasonable officer would have perceived probable cause to charge him with terroristic threats because the threat he made was not imminent and was not made under circumstances that would cause a person to believe that it was likely to be carried out"). In sum, there are no facts to support an inference that Ms. McMullen lacked probable cause for the arrest. Therefore, the Complaint also fails to state a claim for false arrest with regard to the second arrest.

*Third*, Mr. Nicastro alleges that the last arrest took place on March 15, 2021. He states that Ms. McMullen "called [him] into her office to arrest and imprison" him and that she "gave false, misleading & incomplete [t]estimony to the Lancaster authorities to construct a threat to her." Compl. at 7. But Mr. Nicastro does not allege that Ms. McMullen actually arrested him on this occasion. Instead, as suggested by his statement that Ms. McMullen gave information to "Lancaster authorities," the criminal docket for Mr. Nicastro's March 15, 2021 arrest shows that an officer named Nathan Nickel made the March 15, 2021 arrest and charged Mr. Nicastro with making terroristic threats to terrorize another. Dkt. No. MJ-02204-CR-0000057-2021, at 2. So Ms. McMullen did not arrest Mr. Nicastro on the third occasion.

8

To the extent Mr. Nicastro seeks to otherwise hold Ms. McMullen liable for her role in effectuating the arrest, Mr. Nicastro does not allege that the conduct for which he was charged (terroristic threats) did not take place. He alleges that Ms. McMullen falsely stated they were "communicating via text" and that she was not "the object of [his] words," but in the same paragraph Mr. Nicastro states that a "[p]rison guard [rather than Ms. McMullen] and some of the other men are named in the text." Compl. at 7. To construe these two statements as establishing that there was no "text" from Mr. Nicastro communicating a threat would be an unwarranted inference. Because Mr. Nicastro does not allege a lack of probable cause for an arrest based on threats he made to Ms. McMullen, the complaint fails to allege sufficient factual matter as to the third arrest as well.

Mr. Nicastro also appears to allege, with regard to the third arrest, that Ms. McMullen engaged in a malicious prosecution of him in "construct[ing] a threat to her" so that he would be imprisoned. Compl. at 7. However, a malicious prosecution claims requires, among other elements, showing that "the criminal proceeding ended in plaintiff's favor." *Estate of Smith v. Marasco*, 318 F.3d 497, 521 (3d Cir. 2003). Mr. Nicastro does not allege that the proceeding ended in his favor. Instead, he states that he "will continue to bide [his] time in [Lancaster County Prison] until given a [t]rial." Compl. at 7. Because he does not (and cannot) allege that the criminal proceeding ended in his favor, Mr. Nicastro's allegations fail to establish a claim for malicious prosecution as a matter of law.

Therefore, Mr. Nicastro fails to meet his burden as the complainant to allege sufficient factual matter to support a plausible Fourth Amendment claim related to any of the three arrests. *Iqbal*, 556 U.S. at 678.

C. Fourteenth Amendment

Mr. Nicastro also asserts the Fourteenth Amendment as a basis for his claims, alleging that the process through which he was arrested each of the three times was unfair. However, the Supreme Court has held that claims based on pretrial deprivations of liberty are properly brought under the Fourth Amendment rather than the "more generalized notion of substantive due process" under the Fourteenth Amendment. *Albright v. Oliver*, 510 U.S. 266, 273–75 (1994) (internal quotation marks omitted). The Court of Appeals for the Third Circuit has also held that claims related to false arrest and false imprisonment in particular are required to be brought under the Fourth Amendment, not the Fourteenth Amendment. *Berg v. Cnty. of Allegheny*, 219 F.3d 261, 269 (3d Cir. 2000) ("[T]he constitutionality of arrests by state officials is governed by the Fourth Amendment rather than due process analysis."). Mr. Nicastro's Fourteenth Amendment claims will also be dismissed.

Therefore, Mr. Nicastro's personal-capacity claims against Ms. McMullen fail as a matter of law and will be dismissed.

**II.    Mr. Doughty's Motion to Dismiss**

Mr. Doughty argues that Mr. Nicastro fails to state a § 1983 claim against him because he has not alleged action by Mr. Doughty under color of state law. Section 1983 claims are available only against a person who acts "under color of" state law. 42 U.S.C. § 1983. "The color of state law element is a threshold issue; there is no liability under § 1983 for those not acting under color of law." *Groman v. Twp. of Manalapan*, 47 F.3d 628, 638 (3d Cir. 1995).

Mr. Doughty is a private therapist employed by T.W. Ponessa & Associates. Compl. at 2. Although Mr. Nicastro repeatedly refers to Mr. Doughty as his "state-mandated therapist," the basis for Mr. Nicastro seeking out a private therapist's services does not render that therapist a

10

state actor. Even if the Commonwealth of Pennsylvania pays for Mr. Nicastro's sessions with Mr. Doughty, "[a]cts of private contractors do not become acts of the State simply because they are performing public contracts." *Boyle v. Governor's Veterans Outreach & Assistance Ctr.*, 925 F.2d 71, 76 (3d Cir. 1991).

However, construing the Complaint liberally in Mr. Nicastro's favor, the Court will also consider what theories of action "under color of" state law he could arguably intend to pursue.

### A. Symbiotic Relationship

First, under the symbiotic relationship approach, action under color of state law may be established where "the conduct complained of is in fact fairly attributable to the state" "by virtue of the close involvement of the state and interdependence of the actors in the association formed and the challenged activity." *Crissman v. Dover Downs Ent. Inc.*, 289 F.3d 231, 240–41 (3d Cir. 2002). Mr. Nicastro references "interdependence" in both of his responses to the motions to dismiss. Doc. No. 31, at 1; Doc. No. 35, at 1. But he has not alleged any facts that could support a theory of a symbiotic relationship. There is no basis on which the Court could infer that Mr. Doughty somehow benefitted from warning state actors about threats Mr. Nicastro made in a private therapy session. Nor is there any basis to infer that Mr. Doughty relies on the state for his professional conduct as a private therapist. The symbiotic relationship approach does not provide a basis for a § 1983 claim against Mr. Doughty.

### B. Joint Action

Next, it is possible that Mr. Nicastro intends to pursue a theory of joint action such that Mr. Doughty's actions as a private therapist in conjunction with a state actor could constitute action under color of state law. *See Dennis v. Sparks*, 449 U.S. 24, 27–28 (1980) ("Private persons, jointly engaged with state officials in the challenged action, are acting 'under color' of law for

11

purposes of § 1983 actions."). "Determining state action in such cases requires tracing the activity to its source to see if that source fairly can be said to be the state. The question is whether the fingerprints of the state are on the activity itself." *Leshko v. Servis*, 423 F.3d 337, 340 (3d Cir. 2005). "The issue is not whether the state was involved in some way in the relevant events, but whether the action taken can be fairly attributed to the state itself." *Groman*, 47 F.3d at 638.

Here, Mr. Nicastro alleges that Mr. Doughty "disclose[d] confidential privileged information from [his] therapy sessions to [Ms.] McMullen." Compl. at 6. He asserts that this disclosure "violated [his] Trust, breached [their] Contract,[4] broke the Law, and infringed upon [his] Civil Rights." *Id.* But private therapists in Pennsylvania are required to warn law enforcement officials when patients make credible threats. *See, e.g., Emerich v. Phila. Ctr. for Hum. Dev., Inc.*, 720 A.2d 1032, 1043 (Pa. 1998). This duty to warn is imposed on *all* private therapists; fulfilling this duty does not render the warning a form of joint state action. Mr. Nicastro has not shown that Mr. Doughty acted jointly with a state actor for § 1983 purposes.

### C. Conspiracy with a State Actor

Alternatively, Mr. Nicastro's complaint could be read as alleging that Mr. Doughty engaged in a conspiracy with Ms. McMullen, who is a state actor, to deprive him of his constitutional rights. *See, e.g., Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 152 (1970) (noting that "a private party involved in such a conspiracy, even though not an official of the State, can be liable under § 1983"). Mr. Nicastro references "[c]onspiracy, [c]rimes, & [c]over-up by the PA DOC, PBPP [Pennsylvania Board of Probation and Parole], PA State Police, Local DAs, and PA Attorney General." Compl. at 9. Then, in his second response to the motion to dismiss, he

---

[4] To the extent Mr. Nicastro seeks to allege a breach of contract, this is a state cause of action. Given the dismissal of Mr. Nicastro's federal claims, there is no basis for this Court to exercise pendent jurisdiction over any state law claims. *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 725 (1966).

12

references Mr. "Doughty's collusion with [Ms.] McMullen to seek criminal charges against" him. Doc. No. 35, at 1.[5]

But to establish Mr. Doughty as a conspirator, Mr. Nicastro would need to plausibly allege an agreement between Mr. Doughty and a state actor to deprive Mr. Nicastro of his rights. *Jutrowski v. Twp. of Riverdale*, 904 F.3d 280, 295 (3d Cir. 2018). He does not. Mr. Nicastro would also need to establish a constitutional violation through the concerted action of Mr. Doughty and a state actor. *Id.* For the reasons stated above in analyzing the First, Fourth, and Fourteenth Amendment claims against Ms. McMullen, Mr. Nicastro fails to establish such a violation. Therefore, Mr. Nicastro's claims against Mr. Doughty will also be dismissed.

## III. Injunctive Relief

Even if Mr. Nicastro asserted a viable claim against either defendant, the Court could not grant Mr. Nicastro the injunctive relief he seeks. Mr. Nicastro asks the Court to (1) grant him leave to refile a complaint in another case he brought in the U.S. District Court for the Western District of Pennsylvania and (2) initiate a federal criminal investigation into the alleged conspiracy among various state and local agencies and officials. Such relief is not properly within this Court's power.

First, a judge cannot grant a litigant leave to reopen a case brought in another court. This Court does not have authority to direct another federal court to take such action.

Second, a federal district judge presiding over a civil case cannot compel state or local authorities to pursue a criminal investigation. Criminal statutes do not provide a private right of action by civil litigants. *See Mikhail v. Kahn*, 991 F. Supp. 2d 596, 636 (E.D. Pa. 2014), *aff'd*, 572

---

[5] Complaints may not be amended through opposition briefs, *Pa. ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988), but the Court considers this allegation as additional background for purposes of understanding the *pro se* complaint.

13

F. App'x 68 (3d Cir. 2014) (per curiam) ("[P]rosecution of violations of federal criminal law in federal court is a function of the federal government, not private parties, and federal courts lack the power to direct the filing of criminal charges[.]") (internal quotation marks and citations omitted)); *Caterbone v. Lancaster City Bureau of Police*, No. 18-cv-2710, 2018 WL 3549266, at *3 (E.D. Pa. July 24, 2018) ("Criminal statutes do not generally provide a basis for a litigant's civil claims, and this Court lacks the authority to initiate criminal proceedings.").

Therefore, this Court could not award the injunctive relief sought by Mr. Nicastro even if he had established a viable claim against either defendant.

## IV. Mr. Nicastro's Other Pending Motions

Mr. Nicastro has also filed a motion to hold Ms. McMullen and Mr. Doughty in contempt of court. Also, in his first response to the motions to dismiss, he asks the Court to add Mr. Doughty's employer as a defendant. The Court will deny both motions.

First, Mr. Nicastro seeks to hold both defendants in contempt of court based on their alleged misrepresentations in other proceedings and based on Mr. Doughty not providing him with a proper copy of an incident report form. However, to hold a litigant in contempt of court requires a court order that the litigant has disobeyed. *See Young v. U.S. ex rel. Vuitton et Fils S.A.*, 481 U.S. 787, 798 (1987). This Court has not issued any orders to the defendants and, as such, has not found the defendants to have violated any such orders. To the extent Mr. Nicastro believes either defendant has made false representations to other courts, those other courts would be the proper venue for such complaints.

Second, Mr. Nicastro seeks to add Mr. Doughty's employer, T.W. Ponessa & Associates, as a defendant. But he has not asserted any claims against T.W. Ponessa & Associates. Because the claims against Mr. Doughty are dismissed, it would be futile to allege claims against his

14

employer on the basis of vicarious liability. *See Walton v. Mental Health Ass'n of Se. Pa.*, 168 F.3d 661, 665 (3d Cir. 1999). Further, the complaint and request to add the defendant raise no basis on which T.W. Ponessa & Associates could be subject to a theory of direct liability. Therefore, the Court will not grant Mr. Nicastro leave to amend his complaint to add this particular defendant.

## CONCLUSION

Because Mr. Nicastro has failed to state a § 1983 claim against either defendant, the Court grants Ms. McMullen's and Mr. Doughty's motions to dismiss. Mr. Nicastro's claims are dismissed without prejudice. The Court also denies Mr. Nicastro's other pending motions. An appropriate order follows.

BY THE COURT:

GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE